Michael J. Sexton, CA Bar No. 153435
michael.sexton@ogletreedeakins.com
James T. Conley, CA Bar No. 224174
james.conley@ogletreedeakins.com
Christian J. Keeney, CA Bar No. 269533
christian.keeney@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Park Tower, Suite 1500
695 Town Center Drive
Costa Mesa, CA  92626
Telephone:  714.800.7900
Facsimile:   714.754.1298

Attorneys for Defendant HOME DEPOT U.S.A.,
INC. (erroneously sued as THE HOME DEPOT, INC.)

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA GIANELLI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE HOME DEPOT, INC.,<br><br>Defendants. | Case No. 2:13-CV-01969-JAM-CKD<br><br>**ORDER GRANTING DEFENDANT THE HOME DEPOT, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>DATE:      May 17, 2016<br>TIME:      1:30 P.M.<br>CTRM:      6<br><br>Complaint Filed:   September 23, 2013<br>Trial Date:      Vacated - June 6, 2016 |

The Honorable John A. Mendez heard Defendant Home Depot U.S.A., Inc.'s ("erroneously sued as "The Home Depot, Inc.") ("Home Depot") Motion for Summary Judgment on  May 17, 2016 at 1:30 p.m. Michael J. Sexton and Christian J. Keeney appeared on behalf of Home Depot, and Eric A. Woosley appeared on behalf of Plaintiff Sheila Gianelli ("Plaintiff").

For the reasons set forth in the attached transcript of the May 17, 2016 hearing, the Court orders that Home Depot's Motion for Summary Judgment is GRANTED in its entirety and Home Depot is entitled to judgment as a matter of law.

The Court further orders that this action be dismissed on the merits with prejudice.

**IT IS SO ORDERED.**

DATED: _5·27·2016_ , 2016

Honorable John A. Mendez
United States District Court

CERTIFICATE OF SERVICE

1

<pre>
 1                   IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF CALIFORNIA
 2                             ---oOo---

 3
    SHEILA GIANELLI, an individual,
 4
            Plaintiff,
 5
    Vs.                                   Case No. 2:13-CV-1969 JAM
 6                                         Tuesday, May 17th, 2016
    THE HOME DEPOT, INC.,                  1:30 p.m.
 7
            Defendant.
 8   _____/

 9

10                             ---oOo---

11           BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE
                RE:  MOTION FOR SUMMARY JUDGMENT
12
                               ---oOo---
13

14   For the Plaintiff:        LAW OFFICES OF WOOSLEY & PORTER
                               1602 State Street
15                             Santa Barbara, California  93101
                               BY:  ERIC ALAN WOOSLEY,
16                                   Attorney At Law

17   For the Defendant:        OGLETRE, DEAKINS, NASH, SMOAK &
                               STEWART, PC
18                             695 Town Center Drive, Suite 1500
                               Costa Mesa, California  92626
19                             BY:  CHRISTIAN J. KEENEY,
                                   Attorney At Law
20                             BY:  MICHAEL J. SEXTON,
                                   Attorney At Law
21

22
     Reported by:  CATHERINE E.F. BODENE, CSR #6926, RPR
23                 Official Court Reporter USDC, 916-446-6360
                   501 I Street, Room 4-200
24                 Sacramento, California  95814

25   TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION
</pre>

2

1    SACRAMENTO, CALIFORNIA, TUESDAY, MAY 17TH, 2016, 1:30 P.M.

2                             ---o0o---

3           THE CLERK:  Calling Civil 13-1969, Gianelli versus

4    Home Depot, Inc.

5        Counsel, approach and state your appearance, please.

6           MR. WOOSLEY:  Good afternoon, Your Honor.  Eric

7    Woosley on behalf of plaintiff.

8           THE COURT:  Good afternoon.

9           MR. KEENEY:  Good afternoon, Your Honor.  Christian

10   Keeney, counsel for Home Depot.

11          MR. SEXTON:  Also Mike Sexton, counsel for Home

12   Depot.

13          THE COURT:  All right.  Feel free to stand or sit

14   wherever you want.  As long as there is a microphone in front

15   of you, it doesn't matter to me.

16       The defendant has filed a motion for summary judgment, or

17   in alternative, a partial motion for partial summary judgment.

18   It has been opposed by the plaintiff, and I reviewed the reply

19   brief as well, along with all the documentation that was filed

20   in support and in opposition to this motion.

21       At the outset, Mr. Woosley, your client has conceded the

22   intentional inflict of emotional distress and negligent

23   infliction of emotional distress claims, correct?

24          MR. WOOSLEY:  Correct, Your Honor.

25          THE COURT:  So summary judgment is granted in favor of

3

1    the defendants on those claims.

2        Then what remains in this case is plaintiff's sex, age, and

3    sexual orientation discrimination claims; the plaintiff's sex,

4    age, and sexual orientation harassment claim; and the

5    plaintiff's sex, age and sexual orientation retaliation claims.

6        I don't have a lot of questions.  The briefs and the

7    supporting papers are excellent.  They lay out the case really

8    well for the court, and I appreciate that in terms of the

9    paperwork.

10        In terms of some evidentiary issues, Mr. Keeney, on behalf

11    of Home Depot, filed a -- the plaintiff filed a request for

12    judicial notice.  That was opposed by the defendant.

13        That objection to the request for judicial notice is

14    granted.  That complaint is not a proper document for judicial

15    notice, other than I can take judicial notice that a complaint

16    was filed.  But other than that, any allegations, anything with

17    respect to that complaint would not be subject to judicial

18    notice.

19        There is obviously a dispute.  The allegations are denied.

20    And so the court has not and cannot consider that complaint

21    that was filed in a different case.

22        There also was a declaration submitted in the opposition on

23    behalf of Ms. Gianelli, a lengthy declaration.  I always find

24    declarations in summary judgment motions interesting,

25    particularly when someone has been deposed.

4

1         But nevertheless, there are a number of evidentiary

2    objections raised, in fact evidentiary objections to 32

3    different statements in the declaration.

4         I did look through those.  Again, I found each and every

5    one of the evidentiary objections to be correct.  And I would

6    sustain each of those objections.

7         They are primarily for lack of foundation, assumes facts

8    not in evidence, improper legal conclusions, lack of personal

9    knowledge.

10        The problem with declarations as opposed to depositions is,

11   as we all know, they're written by lawyers, or at least

12   reviewed and modified by lawyers and then signed by

13   individuals.  That's why they're not as effective, especially

14   in a summary judgment motion as opposed to depositions.  So

15   those objections were sustained and are sustained.

16         So let's go through the remaining claims, starting with

17   the discrimination claim.

18        Plaintiff has brought claims alleging sex, age and sexual

19   orientation discrimination in violation of Title VII.

20        One of the arguments is that plaintiff can't establish a

21   prima facie case of sex discrimination.  Mr. Woosley, in terms

22   of just focusing on age or sexual orientation discrimination, I

23   didn't see anything in your opposition that really raised any

24   argument that you felt that your client had demonstrated a

25   prima facie case as to age or sexual orientation

5

1    discrimination.

2         MR. WOOSLEY:   That's fair, Your Honor.   We focused on

3    the sex.

4         THE COURT:   Okay.   So focusing on the sex

5    discrimination claim, first, again, the defendants argue that

6    prima facie case hasn't been demonstrated.

7         I should also step back a second.   One of the reasons that

8    this becomes an issue is the McDonnell Douglas test.   And one

9    of the issues that is raised by the motion is that in these

10   types of cases, a party can survive summary judgment either by

11   presenting direct evidence of discrimination or by satisfying

12   the analytical framework that's set out in McDonnell Douglas

13   versus Green case, a 1973 Supreme Court case discussed in these

14   papers.

15        Plaintiff has argued that she has direct evidence of

16   discrimination and therefore does not need to prove the

17   elements of a prima facie case as would be required under

18   McDonnell Douglas.

19        Plaintiff has argued that her direct evidence consists of

20   her termination notice and her statement, which is unsupported,

21   that Ms. Kring ratified the conduct of both Armstrong and

22   Huarte, H-u-a-r-t-e, and failed to investigate, document or

23   follow HR procedures.

24        In fact, the termination notice in this case says nothing,

25   doesn't contain any language about plaintiff's age or sex, and

6

1   therefore that cannot be considered by the court as direct

2   evidence of discrimination.   Direct evidence is actually

3   evidence which, if believed, proves the fact without inference

4   or presumption.

5       Then the allegation that Ms. Kring ratified the conduct of

6   Mr. Armstrong and Mr. Huarte is also just based on speculation.

7   It is also vague.  And therefore, plaintiff has no direct

8   evidence of discrimination.

9       And so in cases where there is no evidence of direct

10  discrimination, then the McDonnell Douglas burden shifting

11  framework does apply.  So we will focus on that in this motion,

12  as do the briefs.

13      Under the McDonnell Douglas framework, the plaintiff has an

14  initial burden to demonstrate a prima facie case of

15  discrimination.  And to establish a prima facie case, generally

16  the plaintiff must prove evidence that she was a member of a

17  protected class, that she was qualified for the position she

18  sought, or was performing competently in the position she held

19  and she suffered an adverse employment action such as

20  termination, demotion, or denial of available job, and that

21  some other circumstance suggests discriminatory motive.

22      If the plaintiff is able to meet this burden, the burden

23  then shifts to the employer, in this case Home Depot, to

24  produce evidence that demonstrates that its action was taken

25  for a legitimate, nondiscriminatory reason.

7

1       And then finally, if the employer produces evidence of a

2       legitimate, nondiscriminatory reason for its action, then the

3       burden shifts back to plaintiff to demonstrate that the alleged

4       nondiscriminatory reasons are pretextual for the employer's

5       true discriminatory motive.

6           So that's what we're focusing on.

7           Getting back then to the sex discrimination claim,

8       Ms. Gianelli has argued that her termination was an adverse

9       employment action, and that she has demonstrated the existence

10      of sex discrimination.

11          This is in her opposition brief at page 13.

12          Her evidence includes the following:

13          That the plaintiff was the only female general manager in

14      her region when she was hired; that she was told that two of

15      the women at the facility tend to exaggerate things; that some

16      operation managers refer to their office space as a "man cave";

17      that a coworker sent an email that said that the office needs a

18      man's perspective; and that management allegedly blamed

19      plaintiff, Ms. Gianelli, for that inappropriate email.

20          She received a host of emails late one night, and a

21      coworker told another woman in the office, again not in front

22      of Ms. Gianelli:  Wow.  You look nice.  Have a hot date

23      tonight?

24          The defendant has argued that Ms. Gianelli's attempt to

25      show a prima facie case is full of unsupported allegations and

8

1   conclusory assertions and is devoid of actual evidence.

2       In terms of those two arguments, I do find that Home Depot

3   has the better of the argument on this claim.

4       Plaintiff agrees that to establish a prima facie case --

5   discrimination case, that she must show through admissible

6   evidence that she was in a protected class, that she suffered

7   an adverse employment action, that she suffered the adverse

8   employment action because of her protected status.

9       The evidence that the court has before it in this motion by

10  the plaintiff does not, as the court views it in the light most

11  favorable to plaintiff, it clearly doesn't establish or rise to

12  the level that is required, that she was fired because of her

13  sex.

14      At most, at best it could be argued that the plaintiff has

15  established there might have been some inappropriate comments

16  made in the workplace, but her evidence fails to demonstrate

17  objectively that she was fired because of her sex.

18      It is clear that she believes she was fired because of her

19  sex, but a plaintiff does not create a genuine issue of

20  material fact by relying solely on her subjective belief that

21  the challenged employment action was unnecessary or

22  unwarranted.

23      That's *** Cromwell versus Electoral Central Credit Union

24  case, 2006, a Ninth Circuit case.

25      Where the only evidence presented is uncorroborated and

9

1    self-serving testimony by the plaintiff, this cannot raise a

2    genuine issue of material fact.   That's the Delaney versus

3    Lynwood Unified School District case, a Central District of

4    California case from 2009.

5        The court finds that plaintiff's evidence in support of her

6    case and in opposition to this motion really consists primarily

7    of that declaration that she submitted.   The other declarations

8    were of little or no help to her.   They really are, more or

9    less, character references, but not really evidence.

10       And so everything is derived from her declaration.   Even if

11   I assume that everything in that declaration is entirely true,

12   it is still not clear she has met her burden of demonstrating

13   she was fired because of her sex.   And for those reasons the

14   court does grant summary judgment on the sex discrimination

15   claim.

16       Let me also add that even if I thought that a prima facie

17   case had been made out by the plaintiff for discrimination, I

18   would still find in Home Depot's favor on this issue.   Under

19   that McDonnell Douglas balancing test, the defendant has more

20   than met its burden that there was a legitimate,

21   nondiscriminatory reason for Ms. Gianelli's termination.

22       There's a February 2nd, 2010 -- it is referred to as a PIP.

23   Remind me again what that stands for.

24            MR. KEENEY:   Perform Improvement Plan.

25            THE COURT:   There is a Performance Improvement Plan.

10

1   There is a March 24, 2010 performance review, and an October

2   28th, 2010, corrective action.  And then there is a November

3   23rd, 2010 termination, and this all provides documentary

4   evidence of plaintiff's alleged poor work performance.

5       This documentary evidence is also supported by the

6   testimony of Kring and Schoen, S-c-h-o-e-n, in their

7   depositions.

8       As pointed out by the defendant, termination due to one's

9   poor performance is not an illegitimate and discriminatory

10  reason.  That's Pottenger versus Potlach, P-o-t-l-a-c-h, Corp,

11  a Ninth Circuit case from 2003.

12      So even if I found that the plaintiff had met her burden

13  to demonstrate a prima facie case, I would then still conclude

14  that the defendant had met its burden to demonstrate that it

15  had a legitimate nondiscriminatory reason for its decision to

16  fire plaintiff.  And then plaintiff would be required to show

17  that the legitimate, nondiscriminatory reason for her firing

18  was, in fact, pretextual.

19      Here again, there is little if no opposition with respect

20  to that issue.  Plaintiff has only offered the following

21  response with respect to that issue as to why defendant's

22  reasons might be pretextual.

23      She writes that:

24      Sheila Gianelli received outstanding performance reviews

25  prior to complaining to Home Depot management of the treatment

11

1   she and the other female employees were being subjected to.

2   And Sheila Gianelli began receiving negative reviews after

3   complaining to Home Depot management of the treatment she and

4   the other female employees were being subjected to.

5        Plaintiff does not, with respect to this issue, cite any

6   admissible evidence for those conclusory statements.  And they

7   clearly do not meet the requirement, the standard of

8   significant and substantial evidence of pretext.

9        So for all of these reasons the court finds that summary

10  judgment is appropriate on all the discrimination claims.

11       On the harassment claims, there are harassment claims

12  brought under Title VII and FEHA in this lawsuit.  The

13  plaintiff is required to prove the following:

14       That a hostile work environment, sexual harassment claim,

15  requires the plaintiff employee to show she was subjected to

16  sexual advances, conduct or comments that were unwelcome

17  because of her sex, and sufficiently severe or pervasive to

18  alter the conditions of her employment and create an abusive

19  work environment.  And in addition, the plaintiff is required

20  to establish that the offending conduct was imputable to her

21  employer.

22       Defendant, again, has moved for summary judgment on the

23  sex, age and sexual orientation harassment claims.  Defendant

24  has argued that plaintiff has not provided any evidence that

25  she was subject to severe and pervasive harassment on the basis

12

1    of any protected category, or that the defendant acted

2    negligently in failing to prevent such alleged harassment.

3        Plaintiff has responded in her opposition that the question

4    of whether conduct is severe or pervasive enough is going to be

5    a jury question.

6        Plaintiff has also alleged that the defendant is strictly

7    liable for her harassment because it was engaged in by its

8    supervisors.

9        First, plaintiff is incorrect that the question of severity

10   and pervasiveness can only be determined by a jury.   The

11   California Supreme Court made it clear that this is an issue

12   that can be resolved on summary judgment if there is a lack or

13   a meager showing of facts in support of this claim as the court

14   finds in this case.

15       So it isn't only just a jury question, and it doesn't have

16   to get to the jury in circumstances similar to this case before

17   the court today where there is a noticeable lack of evidence to

18   support the claim.

19       In determining whether the environment is hostile, the

20   courts do apply a totality of the circumstances test.   The

21   circumstances include the frequency of the discriminatory

22   conduct, its severity, whether it is physically threatening or

23   humiliating, or is it really just a mere offensive utterance,

24   and whether it unreasonably interferes with the employee's work

25   performance.

13

1       In addition, not all workplace conduct that may be

2  described as harassment affects a term condition or privilege

3  of employment within the meaning of Title VII.

4       In the case before the court, again taking the evidence in

5  the light most favorable to plaintiff, there's still, the court

6  finds, insufficient evidence for any trier of fact to conclude

7  that the alleged misbehavior was sufficiently severe or

8  pervasive to alter the conditions of Ms. Gianelli's employment

9  and/or create an abusive work environment.

10       There are a number of factors that are identified in the

11  1986 Supreme Court case Meritor Savings Bank versus Vinson.  In

12  that case those factors all support the position that

13  defendants have taken in this case.  The alleged sexual

14  harassment in this case was infrequent, it was not severe, and

15  it was not threatening or humiliating, and it did not

16  unreasonably interfere with the plaintiff's work performance.

17       As pointed out by defendant, multiple courts have concluded

18  that worse behavior than that alleged in this case was not

19  severe or pervasive enough to create liability.  In Zetwick

20  versus County of Yolo, the court found that defendant's

21  conduct, which actually consisted in that case of giving hugs

22  and kisses to his coworkers and subordinates, was boorish or

23  overbearing, but did not rise to the level of a Title VII or

24  FEHA violation and was not objectively abusive.

25       Lappin versus Laidlaw Transit Inc., a Northern District of

14

1    California case, also supports defendant's position, as well as

2    Mokler, M-o-k-l-e-r, versus County of Orange, a California

3    Court of Appeals case from 2007.

4        As for plaintiff's age and sexual orientation harassment

5    claims, again plaintiff has failed to demonstrate severe and

6    pervasive harassment based on her age or sexual orientation.

7        Again, in fact, plaintiff did not even address these

8    arguments in her opposition brief, which in effect tells the

9    court that plaintiff has conceded that there is no merit to

10   those claims.

11       So for all of those reasons the court does grant summary

12   judgment in favor of the defendants on the plaintiff's sex, age

13   and sexual orientation harassment claims.

14       That leaves retaliation.

15       There are retaliation claims in this lawsuit as well.  In a

16   retaliation claim a plaintiff needs to show that she engaged in

17   a protected activity, that the employer subjected her to an

18   adverse employment action, and that there is a causal link that

19   exists between the protected activity and the employer's

20   action.

21       Once again, an employee establishes a prima facie case,

22   then the employer is required to offer a legitimate,

23   nonretaliatory reason for the adverse employment action.  If

24   the employer produces a legitimate reason for the adverse

25   employment action, then the presumption of retaliation drops

15

1   out of the picture and the burden shifts back to the employee
2   to prove intentional retaliation.

3        That's the Yanowitz versus L'Oréal USA case, a California
4   Supreme Court case from 2005.

5        Defendant seeks summary judgment on these claims on the
6   basis that plaintiff didn't suffer an adverse employment
7   action.   In the alternative, defendant argues that it did have
8   a legitimate, nonretaliatory reason for its actions, and
9   plaintiff has insufficient evidence to show that the reasons
10  are pretextual.

11       Defendant argues, as with the other claims, that plaintiff
12  has not established a prima facie case of retaliation, in part
13  because some of the corrective actions took place before she
14  actually complained about her alleged discrimination.

15       There is evidence that plaintiff did not complain until
16  August -- let's see.   August 3rd, 2010, was the first time that
17  plaintiff reported discrimination, and a number of the acts
18  that are complained of clearly took place before August 3rd,
19  2010.

20       Other acts took place too long after she complained about
21  her alleged discrimination and also the undisputed facts show
22  the person who terminated plaintiff didn't know that she had
23  ever complained about her alleged discrimination.

24       Plaintiff has raised in her opposition that she was
25  terminated after she complained about the alleged harassment

16

1  and that the law does not require the person who terminated her

2  to know about her previous complaints.

3      Again, the court finds that the defendant has the better of

4  the arguments on this issue.  Plaintiff agrees that to

5  establish a prima facie case of retaliation she must show a

6  causal link between the protected activity and the employer's

7  action.

8      The evidence submitted by plaintiff does not establish a

9  causal link between her complaints being about sexual

10  harassment and her firing.

11     Again, it is clear to the court that plaintiff may believe

12  that she suffered an adverse employment action because she

13  complained about sexual harassment, but plaintiff has not

14  created a genuine issue of material fact by relying solely on

15  her subjective beliefs that the challenged employment action

16  was unnecessary or unwanted.

17     In Cornwell versus Electra Central Credit Union, a 2006

18  Ninth Circuit case, the court held that where the only evidence

19  presented is uncorroborated and self-serving testimony by

20  plaintiff, this cannot raise a genuine issue of material fact.

21     Delaney versus Lynwood Unified School District also

22  provides support to the defendant's argument.

23     Plaintiff's evidence, again, in support of these claims is

24  almost entirely derived from her declaration.  And even if I

25  assumed all of the facts to be true in that declaration, it is

17

```
 1   still clear plaintiff has not met her burden of demonstrating,
 2   as she is required to do, a causal link between the protected
 3   activity and the employer's action.
 4        For these reasons the court finds that summary judgment on
 5   the retaliation claims are appropriate.
 6        As with the discrimination claims, even if I thought the
 7   plaintiff had properly set out a prima facie case for
 8   retaliation, Home Depot has still satisfied its burden of
 9   articulating a legitimate nondiscriminatory reason for its
10   actions.
11        In fact, plaintiff does not contest that defendant met its
12   burden of demonstrating that it had a legitimate
13   nondiscriminatory reason for the actions it took.  And given
14   that, the burden would shift to plaintiff to demonstrate a
15   pretext that the reasons for firing were, in fact, pretextual,
16   and plaintiff has failed to satisfy that requirement as well.
17        For those reasons the court grants summary judgment in
18   favor of the defendants on all of the retaliation claims.
19        That would moot the claim for punitive damages since there
20   are no claims remaining.  And in addition, as the defendants
21   have argued, there are legal reasons as to why punitive damages
22   would not be available against Home Depot in this case.
23        Punitive damages are available against a corporation only
24   when a corporate officer, director, or managing agent had
25   advance knowledge and conscious disregard, authorization,
```

18

1     ratification, or act of oppression, fraud or malice. That does

2     not exist in this case.

3         For those reasons the court grants summary judgment in its

4     entirety in favor of Home Depot, and any dates that we've set

5     for pretrial conferences or trial dates are vacated.

6         I'll allow both sides, if you wish, beginning with

7     Mr. Woosley, to respond to the court's comments and make a

8     record. But the bottom line, Mr. Woosley, there just isn't

9     enough there to even get it to a jury, but go ahead.

10         MR. WOOSLEY: Thank you, Your Honor. I would like to

11     suggest that there is enough to get to the jury.

12         In today's real world nobody says: I'm not hiring you

13     because you're black. Or: I'm not going to rent to you

14     because you're Muslim. Or that they're firing you because

15     you're a woman.

16         The real world today is much more subtle in the

17     discrimination. We've got Ms. Gianelli here who, undisputed,

18     was the first female regional general manager for Home Depot.

19     And on her very first day of employment, they're talking about

20     the only other two women that work there. And they're talking

21     in front of her and feel comfortable enough to talk in front of

22     her saying: You can't trust those people. They exaggerate

23     things. And those two people are the women.

24         Almost immediately, the men, in response to having a woman

25     manager there, start referring to their area as the "man cave."

19

1     By the way, these are things that Ms. Gianelli has personal

2     knowledge of and can testify to.

3         The email where it says:  Listen, with all of the things

4     going on around here, we need to get a man's perspective.

5         That's an email that Ms. Gianelli saw, read, popped up on a

6     screen while she's in the HR manager's office.

7         This is enough evidence that a trier of fact could find

8     that this environment is anti-woman, that this environment does

9     not treat women the same as they treat men, and I believe that

10    we have to take the totality of what Ms. Gianelli went through.

11        I agree that there is no smoking gun.  Nobody put on her

12    performance exam:  We're writing you up because you're a woman.

13    That didn't happen.  It doesn't hardly happen anymore.

14    Certainly it's not going to happen at Home Depot.

15        Instead, it is much more subtle.  She is written up with

16    her termination because she confronted one of the people that

17    she had made a complaint about, Mr. Huarte.

18        She has a perfect performance record and all of a sudden,

19    just complaints start building up against her, until she's

20    terminated.  She started in 2008, and she is terminated by

21    2010.

22        The discrimination that she experienced while much spread

23    out over time and smaller increments, is still discrimination.

24    And I believe that a jury could look at those facts and come to

25    the conclusion that she is not being treated the same as the

20

 1    male employees.

 2        As far as somebody firing her that didn't know her, well,

 3    the actual testimony of Travis Lawrence was that he consulted

 4    with Eric Schoen, so he consulted with one of the people that

 5    interacted with our client and then terminated her.

 6        So to say that this is just some third party, I am minding

 7    my own business, and I decided to fire Ms. Gianelli is not the

 8    case.   It is actually one of the people we allege that

 9    Ms. Gianelli interacted with.   Consulted with him, is what his

10    testimony actually said.

11        And on that, as far as these pretextual reasons, what's

12    noticeable is that there is no investigation files on any of

13    these.   Nobody took these complaints and did some type of

14    investigation, which is called for in the Home Depot policy,

15    before they took these adverse employment actions against

16    Ms. Gianelli.   They just happened.

17        We asked for all the records concerning them.   There is no

18    documentation.   Nobody interviewed my client ahead of time.   In

19    any of the records for these things, they do not exist, which

20    that in itself could lead a jury to concludes they are

21    pretextual.

22        I would ask the court to reconsider letting this matter go

23    to a jury.   I believe that there are at least enough facts.

24    I'll admit, certainly an argument can be made, the arguments in

25    summary judgment are perfectly valid arguments in making a

21

1    closing argument, but I suggest that's where they should be

2    made and a jury could find in favor of my client.

3              THE COURT:  Mr. Sexton.

4              MR. KEENEY:  Mr. Keeney, Your Honor.

5              THE COURT:  Sorry.

6              MR. KEENEY:  I think these are all arguments that were

7    raised in plaintiff's opposition and were certainly addressed

8    in our papers, both the moving papers and the reply.  I've

9    heard the court's comments on them today.  I don't think we

10   have anything further to add.

11             THE COURT:  Okay.  The ruling stands.  Summary

12   judgment is granted.  Mr. Keeney, if you want to prepare an

13   order, you may do so.

14       A lot of times we just have an order prepared that attaches

15   the transcript and it just says:  For the reasons stated in the

16   transcript, judgment is granted.

17       I'll leave it up to you.  Run it by Mr. Woosley for

18   approval to form.  You can get it to me within the next two

19   weeks.

20       We have a minute order that will be on the docket that

21   reflects the court's rulings, but if you want something more,

22   you're more than welcome to submit an order.

23             MR. KEENEY:  Thank you, Your Honor.

24             THE COURT:  All right.  Thank you all.

25       (Off the record at 2:45 p.m.)

```
 1                        REPORTER'S CERTIFICATE

 2                             ---o0o---

 3
     STATE OF CALIFORNIA  )
 4   COUNTY OF SACRAMENTO )

 5

 6          I certify that the foregoing is a correct transcript
     from the record of proceedings in the above-entitled matter.
 7
            IN WITNESS WHEREOF, I subscribe this certificate at
 8   Sacramento, California.

 9

10      /S/ Catherine E.F. Bodene
           CATHERINE E.F. BODENE, CSR NO. 6926
11         Official United States District Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1
**CERTIFICATE OF SERVICE**
*Sheila Gianelli v. Home Depot U.S.A., Inc.*
2
Case No. 2:13-CV-01969-JAM-CKD

3    I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have
4    been employed in the County of Orange in the office of a member of the bar of this court at whose direction the service was made. My business address is 695 Town
5    Center Drive, Suite 1500, Costa Mesa, CA 92626.

6    On this date, I served the following documents on the below-listed parties:

7    **[PROPOSED] ORDER GRANTING DEFENDANT THE HOME DEPOT, INC.'S MOTION FOR SUMMARY JUDGMENT**
8

9    ☒    **(BY CM/ECF SYSTEM)** I caused the above-referenced document(s) to be sent by electronic transmittal to the Clerk's Office using the
10    CM/ECF System for filing which generated a Notice of Electronic Filing to the CM/ECF registrants in this case to the following:

11
Eric A. Woosley                          Attorneys for Plaintiff
12   The Law Offices of Woosley & Porter     SHEILA GIANELLI
1602 State Street
13   Santa Barbara, CA 93101
Tel No.:      (805) 897-1830
14   Fax No.:      (805) 897-1834
ericw@zwlegal.com
15   office@zwlegal.com

16   Mark D. Schwartz                         Attorney (pro hac vice) for Plaintiff
P. O. Box 330                            SHEILA GIANELLI
17   Bryn Mawr, PA 19010
Tel No.:      (610) 525-5534
18   Fax No.:      (610) 525-5534
markschwartz6814@gmail.com
19

20    I declare under penalty of perjury under the laws of the United States of

21   America that the above is true and correct.

22    Executed on May 26, 2016, at Costa Mesa, California.

23

24   Erin Montgomery                          _____
25   Type or Print Name                       Signature

26

27                                                                24872842.1

28

Case No. 2:13-CV-01969-JAM-CKD
CERTIFICATE OF SERVICE